USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/13/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JURGEN PETER ALDINGER,

      Plaintiff,

  -against-

KEDRA ADELE SEGLER,
      Defendant.

------------------------------------------------------------x

04 CV 4405 (RJH)

**MEMORANDUM
OPINION**

  Plaintiff Jurgen Peter Aldinger brings this action against his former wife, defendant Kedra Adele Segler. The Complaint alleges a cause of action in tort arising from Defendant's alleged interference with Plaintiff's custody and visitation rights of the parties' three children. Subject matter jurisdiction is alleged to be based on diversity of citizenship, 28 U.S.C. 1332(a)(2), in that plaintiff is domiciled in Germany and defendant is alleged to be domiciled in New York while residing in Germany. *See* Complaint ¶¶ 1-2. Defendant has now moved to dismiss the complaint against her based on the lack of personal jurisdiction, lack of subject matter jurisdiction, and forum non conveniens. Following discovery on jurisdictional issues, an evidentiary hearing was held on September 21, 2005. On September 26, 2005, the Court issued an order granting defendant's motion to dismiss based on the lack of personal jurisdiction. This opinion sets forth the bases for the Court's decision.

## BACKGROUND

  The facts of this case are as follows. Ms. Segler, a United States citizen and member of the U.S. Army, and Mr. Aldinger, a German citizen, were married in Markt Schwaben,

1

Germany on December 5, 1997. (German Court Order on Dissolution of Marriage, July 16, 2004 (Exhibit 9 to Defendant's Supplemental Submission dated April 6, 2005), p. 2. ("German Court Order").) Their marriage produced three children: Maximilian, born on July 21, 1999 in Wiesbaden, Germany; Alexandria, born on September 1, 2000 in Munich, Germany; and Pascal, born on October 6, 2001 in Heidelberg, Germany. (*Id.*; Transcript, September 21, 2005 evidentiary hearing ("Tr.") p. 23-24.) Ms. Segler left the U.S. Army in September 2000, six days following the birth of the parties' second child. (Tr. 24; Fourth Certification of Defendant Kedra A. Segler in Lieu of Oath or Affidavit, ¶ 9.) In November 2000 the couple jointly purchased a home in Markt Schwaben, Germany (Tr. 26), and lived there with the children until they were separated in May 2001. (Tr. 8.) Following reconciliation, the parties began living together again at the same home in Markt Schwaben in December 2001. (Tr. 25-26, 28.)

In July 2002, Ms. Segler, without Mr. Aldinger's consent, departed from Germany with their three children, ending their journey at the home of Ms. Segler's sister in Puerto Rico. (Tr. 9-10, 47-49; Complaint ¶¶ 13-15.) It appears that Ms. Segler intended to settle in Puerto Rico, enrolling the children in school and finding employment as a teacher. (Tr. 10, 23, 48.) Seeking the return of the children, Mr. Aldinger filed an action in the United States District Court for the District of Puerto Rico on November 1, 2002, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction of October 25, 1980, implemented by the International Child Abduction Remedies Act (42 U.S.C. §§ 11601 *et seq.*). On April 29, 2003, the district court granted Mr. Aldinger's petition, and ordered the children returned to Germany. *See Aldinger v. Segler*, 263 F.Supp.2d 284 (D. Puerto Rico 2003). Ms. Segler accompanied the children back to Germany in mid-May 2003, having

2

begun the process of rejoining the military in Puerto Rico, and she was "sworn into office" as a member of the U.S. Army in Bad Aibling, Germany, in June 2003. (Tr. 13-15; Affidavit of Kiera A. Segler, ¶ 10.) After a period of training in San Antonio, Texas in the fall of 2003, she was apparently stationed in Landstuhl, Germany in November 2003, working at Landstuhl Regional Medical Center, where she has remained until the present.[1] (Fourth Cert. of Kedra Segler, ¶¶ 11-12; Sixth Cert. of Kedra Segler, ¶ 2g).

Mr. Aldinger filed the instant action on June 10, 2004, seeking civil damages in connection with the 2002 abduction and Ms. Segler's alleged ongoing interference with his ability to contact the children. Ms. Segler had filed for divorce from Mr. Aldinger on May 22, 2003, and a German court granted that request, as well as sole custody of the children, to Ms. Segler on July 16, 2004. (German Court Order, p. 2.) In September 2004, Mr. Aldinger was awarded attorney's fees and travel expenses in the amount of $16,971.75 in connection with his original action against Ms. Segler under the International Child Abduction Remedies Act. *Aldinger v. Segler*, 338 F.Supp.2d 296, 299 (D. Puerto Rico 2004).

## DISCUSSION

### A. 12(b)(2) Standard

The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal citations omitted). In situations such as in the instant case, "where the court holds an evidentiary hearing to resolve factual

---

[1] At the evidentiary hearing, Mr. Aldinger and Ms. Aldinger's sister described Ms. Segler as currently living in Ramstein, Germany, where Ramstein Air Base is located, which is approximately three miles from Landstuhl. (Tr. 17, 48.)

3

disputes, the plaintiff must establish jurisdiction by a preponderance of the evidence." *Cavu Releasing, LLC. v. Fries*, 2005 WL 1944269, at *2 (S.D.N.Y. 2005); *see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2nd Cir. 1996).

**B. Personal Jurisdiction**

Where "a federal court's subject matter jurisdiction is based on diversity of citizenship, the court applies the law of the forum state to determine whether it has personal jurisdiction over a defendant." *Paul Revere Life Ins. Co. v. Segal*, 2000 WL 1448626, at *1 (S.D.N.Y. 2000). A New York court obtains personal jurisdiction if the person is a domiciliary at the time of service. *See* N.Y. C.P.L.R. § 313 (McKinney's 2005); *Cockrum v. Cockrum*, 246 N.Y.S.2d 376, 378, 20 A.D.2d 642, 643 (2d Dep't 1964). The complaint in the present matter was filed on June 10, 2004, and Ms. Segler was personally served on July 7, 2004.[2] Though one may possess multiple residences, a person can only have one domicile, "and it has generally been held that the residence established earlier in time remains the individual's domicile until a clear intention to change is established." *Laufer v. Hauge*, 140 A.D.2d 671, 672-73, 528 N.Y.S.2d 878, 879 (New York App. Div. 1988).

While Ms. Segler currently lives in Landstuhl, Germany (Sixth Cert. of Kedra Segler, ¶ 2g), she does not appear to dispute that she once was a domiciliary of New York, at the time of her first enlistment in the U.S. Army, in 1994. Her mother, Florence Segler, indicated during her testimony at the evidentiary hearing that Ms. Segler lived with her in New York

---

[2] In her October 28, 2004 letter reply brief regarding the instant motion, Ms. Segler challenged the method of service in this case as failing to comply with the federal rule regarding service upon individuals in a foreign country. *See* Fed. R. Civ. 4(f). The subject was never briefed by the plaintiff, and the Court declines to address the matter in light of its ruling on the jurisdictional issue.

4

prior to her enlistment (Tr. 39), and her affidavit noted that Ms. Segler used her mother's home address in New York at the time of her enlistment. (Florence Segler, Esq. Aff., ¶¶ 5-6.) Ms. Segler asserts, however, that her place of domicile had changed to Germany well before service in this action in July 2004. "The person alleging a change of domicile has the burden of proving it, [and] [t]o satisfy this burden, two things are indispensable: first, residence in a new domicile; and, second, the intention to remain there." *Gutierrez v. Fox*, 141 F.3d 425, 427-28 (2d Cir. 1998) (analyzing the law of domicile for purposes of establishing subject matter jurisdiction based on diversity); *Bean v. Bean*, 95 N.Y.S.2d 477, 490 (N.Y. Sup.1950) (citing to same two elements).

One's intent, as evidenced by "conduct and statements, is the critical element in determining whether there has been a change of domicile." *Matter of Schwarzenberger*, 215 A.D.2d 393, 394, 626 N.Y.S.2d 229, 230 (N.Y. App. Div. 1995). "The case law is replete with the ingredients of domicile which are born from intent [such as the purchase a home, mortgages, membership in local organizations, and voting practices]." *Meehan v. Lomenzo*, 63 Misc.2d 490, 493-94, 312 N.Y.S.2d 500, 504 (N.Y.Sup. 1970). In determining domicile for the purposes of subject matter jurisdiction on the basis of diversity of citizenship, federal courts may use "a totality of the evidence approach, [where] no single factor is conclusive." *Weber v. Paduano*, 2003 WL 22801777, at *6 (S.D.N.Y. 2003). Factors that may be useful in determining both physical presence and intent to remain in a location indefinitely can include "voting registration and voting practices; location of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several others." *See* Charles Alan Wright, et al.,

5

*Federal Practice and Procedure* § 3612, at 530-31 (2d ed. 1984) (pointing to factors useful in determining diversity for purposes of subject matter jurisdiction).

The record contains a wealth of uncontroverted evidence that, by the late 1990s, Ms. Segler lived in Germany and intended to remain there indefinitely, and Mr. Aldinger has pointed to no evidence that she has ever subsequently reestablished a New York domicile. Following an eleven-month stint in Heidelberg, Germany, in the mid-1990s and a brief return to Alabama and Arizona for training, she requested to be stationed in Wiesbaden, Germany in order to live with her then-fiance, Mr. Aldinger. (Fourth Cert. of Kedra Segler, ¶¶ 4-7.) The two were married in Germany in December 1997. (Tr. 6.) Ms. Segler states that she had the intention of making Germany her home for the indefinite future when she married Mr. Aldinger in 1997. (Fourth Cert. of Kedra Segler, ¶ 9.) Testimony at the evidentiary hearing and affidavits of two family members further attest to this intention on the part of Ms. Segler. (Tr. 45; Florence Segler, Esq. Aff., ¶11; Kiera A. Segler Aff., ¶ 8.) Indeed, plaintiff has not disputed that Ms. Segler possessed the intention to remain in Germany indefinitely when the parties were married, although he quibbles as to the meaning of the term "indefinite." (Supplemental Opposition to Motion to Dismiss, pg. 5-6.) Nor does he dispute that after she resigned from the service in September 2000, Ms. Segler purchased a home with her husband in Germany, where they intended to, and did in fact, live with their three children. (Tr. 27.) Though Mr. Aldinger has provided some evidence that Ms. Segler may have briefly considered a return to New York to work with her mother in the spring of 2002 (Tr. 34-36), such evidence is irrelevant. It is not necessary that Ms. Segler forever maintain the intent to keep Germany her domicile—once she established Germany as her domicile prior to service

in this action, she lost her status as a New York domiciliary.³ Without reacquisition of domicile in the forum state of this Court via establishment of a residence-in-fact and the indefinite intention to remain, personal jurisdiction over Ms. Segler is lacking.

Plaintiff has called the Court's attention to the fact that the defendant is a servicewoman, and is "presumed not to acquire a new domicile when [s]he is stationed in a place pursuant to orders; [s]he retains the domicile [s]he had at the time of entry into the service." *Vitro v. Town of Carmel*, 433 F.Supp. 1110, 1112 (S.D.N.Y. 1977) (determining domicile for purposes of subject matter jurisdiction); *see also Bowman v. DuBose*, 267 F.Supp. 312, 313 (D.S.C. 1967) ("[I]t is well-settled [that a serviceperson] retains his domicile as of date of enlistment unless he indicates an intent to abandon such original domicile and adopt a new one.") (internal citations omitted); *In re Ski Train Fire In Kaprun, Austria on Nov. 11, 2000*, 257 F.Supp.2d 717, 726, 726 n12 (S.D.N.Y. 2003) ("[T]he burden of showing a change in the domicile at enlistment rests with the defendant ... The reason for this rule is that it is presumed that a person serving in the military intends to return to his home.").

However, plaintiff's emphasis on this presumption ignores the uncontroverted fact that Ms. Segler left the military in September 2000 (Kedra Segler Aff., ¶9), and at that time <u>chose</u> to remain in Germany as a civilian, bearing the parties' third child there in October 2001. (Tr. 24.) Thus, it would be her domicile at the time of her *second* entry into service that would be operative in terms of the serviceperson presumption. (Kedra Segler Aff., ¶10 (noting she rejoined the Army in Bad Aibling, Germany in June 2003).) The evidence demonstrates that

---

³ "Generally, it is the intention at the time of arrival at the new residence which is important. The fact that one may later have doubts about remaining in his or her new home or may have had to leave it is not relevant, so long as the subsequent doubt or the circumstances of leaving do not vitiate the earlier intention to make the place the party's home. If an intention to return to a former domicil arises after a new domicil has been acquired, such intention in itself does not affect the acquisition of the new domicil." *New York Jurisprudence on Domicil* § 24.

7

Ms. Segler had undoubtedly established Germany as her domicile prior to the time of her reenlistment.[4] Furthermore, this presumption is rebuttable via the presentation of clear and unequivocal evidence that the domicile has changed, and the defendant has the intent to make a home in the place of military service. *See Vitro*, 433 F.Supp. at 1112; *see also In re Ski Train Fire*, 257 F. Supp. 2d at 726. This, Ms. Segler has done.

While plaintiff notes that Ms. Segler placed her mother's New York address on forms relating to her exit from military service in September 2000, (Certificate of Release or Discharge from Active Duty, Exhibit B to Plaintiff's Opposition to Motion dated October 22, 2004), there is no evidence she thereafter maintained a residence at that address or resumed civilian life in New York. Indeed, Ms. Segler purchased a home in Germany with Mr. Aldinger in the weeks subsequent to her discharge, in November 2000. ("Markt Schwaben House Contract," Exhibit 10 to Defendant's Supplemental Submission in Support of Defendant's Motion to Dismiss.)

Ms. Segler has maintained a number of bank accounts in Germany, and appears to have maintained none in New York. (Fifth Cert. of Kedra Segler.) She has no residence or mailing address in New York, and there is no evidence she has paid any New York state or local taxes in the past decade. She possesses a German driver's license (Exhibit 12 to Defendant's Supplemental Submission dated April 6, 2005), rejoined the military in Germany

---

[4] At the evidentiary hearing, there was some evidence presented that indicated Ms. Segler may have taken some steps towards establishing a permanent life in Puerto Rico between moving there in July 2002 and returning to Germany in mid-2003, such as enrolling the children in school. (Tr. 11, 42.) However, even if Ms. Segler briefly established domicile in Puerto Rico in 2002, such domicile was changed as a practical necessity when the District Court in Puerto Rico ordered the return of the children to Germany in April 2003, and Ms. Segler accompanied them. She thereafter returned to the marital home in Germany from Puerto Rico in May 2003, having re-enlisted in the army for the very purpose of being able to work in Germany and raise her children. (Tr. 13-15, 48.)

8

in June 2003, and is currently stationed at a military hospital in Landstuhl, Germany. She has not voted in a New York state election since "well before 2000." (Third Cert. of Kedra Segler.) At the evidentiary hearing, Ms. Segler's mother and sister remembered Ms. Segler visiting New York for two visits at most since moving to Germany: once for her father's funeral in 1996 (Tr. 39), and once for a medical test at Fort Hamilton in New York (presumably in connection with her re-enlistment). (Tr. 49.)

During periods of separation during the parties' marriage, there is no evidence Ms. Segler ever returned to New York, and the parties' three children, German citizens, have never visited New York. (Defendant's Supplemental Submission in Support of Defendant's Motion to Dismiss, p. 6.) Mr. Aldinger himself asserted that Germany was the children's habitual place of residence in his action against Ms. Segler for the children's return to Germany in 2003. *Aldinger v. Segler*, 263 F.Supp.2d 284, 287 (D. Puerto Rico 2003) ("In order to compel the return of the three children pursuant to the Convention, Mr. Aldinger ... specifically must show that ... the children were removed from their habitual place of residence").

In support of a finding that Ms. Segler was a New York domiciliary at the time of service in this action, Mr. Aldinger directs the Court's attention to a variety of facts that indeed reflect Ms. Segler's origins in the United States: their children are enrolled in English-speaking schools; Ms. Segler may have briefly considered opening a law office with her mother in New York in the spring of 2002; Ms. Segler left Germany and moved to her sister's home in Puerto Rico for a period of time in 2002; Ms. Segler currently lives and works on an American military base in Germany and pays United States income tax; Ms. Segler has limited knowledge of the German language. These facts, however, are insufficient to

9

controvert the extensive evidence Ms. Segler has proffered in support of a finding that she is no longer a domiciliary of New York, and thus, outside the scope of this Court's personal jurisdiction.

## CONCLUSION

For the foregoing reasons, this Court grants defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction.

SO ORDERED

Dated: New York, New York
      October 12, 2005

                                    Richard J. Holwell
                                United States District Judge